1  TIMOTHY P. JOHNSON (BAR NO. 66333)
2  LAW OFFICES OF TIMOTHY P. JOHNSON
3  1970 OLD TUSTIN AVENUE, SECOND FLOOR
   SANTA ANA, CALIFORNIA 92705
4  TELEPHONE: (714) 832-1170
   FACSIMILE: (714) 832-1179
5  E-MAIL: tjohnson@johnson-chambers.com
6
   Attorneys for Defendant GENPACT SERVICES, LLC
7
8
9               UNITED STATES DISTRICT COURT
10          FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
12  ROBERT STIRLING,                    Case No.  LACV 11-6369 JHN-MAN
13          Plaintiff,
14      vs.
15                                      **MEMORANDUM OF POINTS AND
   GENPACT SERVICES, LLC                AUTHORITIES IN SUPPORT OF
16                                       MOTION FOR SUMMARY
17          Defendant                    JUDGMENT OF GENPACT
                                         SERVICES, LLC**
18
19                                      Date:    March 19, 2012
20                                      Time:     2:00 p.m.
                                        Courtroom:   790
21
22                                      The Honorable  Jacqueline H. Nguyen
23
24
25
26
27
28

LAW OFFICES OF TIMOTHY P. JOHNSON

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................6

II.    CLAIMS AGAINST GENPACT AND UNDISPUTED
       MATERIAL   FACTS.....................................................................7

       A.  PLAINTIFF ALLEGES THAT GENPACT VIOLATED
           FEDERAL AND STATE DEBT COLLECTION LAWS.............7

       B.  GENPACT'S COMMUNICATIONS WITH PLAINTIFF
           AND ITS ATTEMPTS TO REACH HIM WERE ONLY
           INTENDED TO DISCUSS PAYMENT OF HIS DEBT
           AND THEY WERE NOT INTENDED TO ANNOY,
           ABUSE AND HARASS PLAINTIFF...................................7

III.   ISSUES PRESENTED BY THE SUMMARY JUDGMENT MOTION.......9

IV.    ISSUES OF LAW..................................................................7

       A.  SUMMARY JUDGMENT SHOULD BE GRANTED
           WHERE THERE IS NO LEGAL OR FACTUAL
           BASIS FOR LIABILITY ...........................................10
           1.  THE ISSUES TO BE ADDRESSED BY A MOTION FOR SUMMARY
               JUDGMENT ARE LIMITED TO THE SCOPE OF THE PLEADINGS.............10
           2.  STANDARDS GOVERNING THE MOTION FOR SUMMARY JUDGMENT........10

       B.  THERE IS NO EVIDENCE THAT GENPACT
           TELEPHONED PLAINTIFF WITH THE INTENT
           TO ANNOY, ABUSE AND HARASS HIM..............................11

LAW OFFICES OF TIMOTHY P. JOHNSON

LAW OFFICES OF TIMOTHY P. JOHNSON

C. CALL FREQUENCY SHOULD NOT BE DEEMED
   SUFFICIENT EVIDENCE OF INTENT UNDER
   SECTION 1692(5) AS AN INCREASED CALLING
   FREQUENCY HAS BEEN MADE NECESSARY BY
   A LINE OF CASES INTERPRETING THE FDCPA....................13

D. THE NUMBER OF CALLS ALONE CANNOT SUPPORT
   A CLAIM FOR A VIOLATION OF DEBT COLLECTION LAWS...18

E. THERE WERE NO ACTUAL CONTACTS TO
   SUPPORT PLAINTIFF'S RFDCPA CLAIM
   PURSUANT TO 1788.11(e).....................................23

F. IF SUMMARY JUDGMENT IS GRANTED AS TO THE
   FDCPA CLAIMS, PLAINTIFF CANNOT PURSUE A CLAIM
   UNDER SECTIION 1788.17...........................................24

V.       CONCLUSION.............................................24

LAW OFFICES OF TIMOTHY P. JOHNSON

# TABLE OF AUTHORITIES

**Cases**

*Arteago v. Asset Acceptance, LLC,*
2010 U.S. Dist. LEXIS 865451 (E.D. Cal. August 23, 2006)............................22

*Berg v. Merch. Ass'n Collection Div.,*
586 F.Supp.2d 1336 (S.D. Fla. 2008)....................................................16, 17, 19

*Bey v. Daimler Chrysler Servs. Of N. Am.,*
2006 U.S. Dist. LEXIS 8261 (D.N.J. Feb. 15, 2006)...................................18

*Bingham v. Collection Bureau, Inc.,* 505 F. Supp. 864 (Dist. N.D. 1981)..............21

*Bowoto v. Chevron Texaco Corp.,* 312 F. Supp.2d 1229 (N.D. Cal. 2004)..10

*Carman v. The CBE Group, Inc.,*
2011 U.S. Dist. LEXIS 29730 (D. Kan. March 23, 2011)...............................21

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d (1986).........11

*Coleman v. Quaker Oats Co.,* 232 F.3d 1271 (9th Cir. 2000)...........................10

*Edwards v. Niagara Credit Solutions, Inc.,* 584 F.3d 1350 (11th Cir. 2009)......17, 19

*Fausto v. Credigy Services Corp.,* 589 F. Supp.2d 1049 (N.D. Cal. 2009)..............21

*Foti v. NCO Financial Systems,* 424 F.Supp.2d 643 (S.D.N.Y. 2006)..................15

*Gorman v. Wolpoff & Abramson, LLP,* 435 F. Supp. 2d 1004 (N.D. Cal. 2006)......18

*Holliday v. Virtuoso Sourcing Group, LLC,*
2011 U.S. Dist. LEXIS 127760 (S.D. Illinois November 4, 2011)..................20, 21

*Hosseinzadeh v. M.R.S. Assocs., Inc.,*
387 F.Supp.2d 1104 (C.D. Cal. 2005)........................................................14

*Jiminez v. Accounts Receivable Management, Inc..*
2010 U.S. Dist. LEXIS 141780 (C.D. Cal. November 15, 2010)...................19, 24

*Katz v. Capital One,* 2010 WL 1039850 (E.D. Va. Mar. 18, 201...................22

*Krapf v. Nationwide Credit Inc.,*
2010 U.S. Dist. LEXIS 57849 (C.D. Cal. May 21, 2010)..........................19, 23

*Martin v. Select Portfolio Serving Holding Corp.,*
2008 WL618788, (S.D. Ohio Mar. 3, 2008)....................................18

*Millsap v. CCB Credit Servs.,*
U.S. Dist. LEXIS 110149 (E.D. Mich. Sept. 30, 2008)...........................23

*Pugliese v. Prof. Recovery Serv., Inc.,*
2010 U.S. Dist. LEXIS 2632562 (E.D. Mich. June 29, 2010).......................21

*Saltzman v. I.C. Sys., Inc.,* 2009 WL 2190359, (E.D. Mich. Sept. 30, 2009)......20, 22

*Syverson v. IBM,* 472 F.3d 1072, 1086 (9th Cir. 2007)...........................12

*Tucker v. CBE Group, Inc.,*
 2010 WL 1849034, (M.D. Fla. May 5, 2010)..................................22

*Wash. Market Co. v. Hoffman*, 101 U.S. 112 (1879). ..........................12

## Statutes

15 USC 1692c(b)......................................................14, 15
15 USC §1692d....................................................7, 11
15 USC §1692d(5).............................................7, 11, 15, 18
15 USC §1692e(11)...............................................13, 15
California Civil Code §1788.11(d)...................................7, 12
California Civil Code §1788.11(e)..................................7, 23
California Civil Code §1788.17....................................7, 24

LAW OFFICES OF TIMOTHY P. JOHNSON

## I.   INTRODUCTION

Plaintiff ROBERT STIRLING ("Plaintiff") has sued Defendant GENPACT SERVICES, LLC ("Genpact") for violations of federal and state debt collection laws.

Genpact does not dispute that it is a debt collector or that the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") control its conduct with regard to its attempts to collect the debt owed by Plaintiff.

Plaintiff claims in this lawsuit that Genpact violated the FDCPA and the RFCPA based solely on the number of telephone calls to him. Genpact does not dispute that it had difficulty in its attempts to reach Plaintiff which resulted in a number of unsuccessful telephone calls to Plaintiff over a several month period. Plaintiff never responded to any of the calls or disputed the debt that he owed in any manner. It was later learned that the only reason that Plaintiff did not respond to any of Genpact's attempts to reach him was that he was told not to communicate with any debt collectors by his debt resolution service.

After intentionally ignoring Genpact's efforts to reach him, Plaintiff now claims that Genpact violated debt collection laws as a result of its attempts to reach him. Plaintiff will base that claim simply on the number of calls by Genpact to him when in actuality it was Plaintiff and his debt resolution service who drove the number of calls by electing to ignore Genpact's attempts to reach him.

The only evidence that will be offered by Plaintiff to support his claim that Genpact intended to abuse, harass or annoy him is the number of telephone calls that were made to Plaintiff by Genpact when—as will become clear—the number of calls simply reflects the difficulty that Genpact had in reaching Plaintiff. Further, it was Plaintiff's own acts instigated by his debt resolution service—which forced Genpact to make multiple calls—due to his following the advice of his debt resolution service

LAW OFFICES OF TIMOTHY P. JOHNSON

1   to refuse to respond in any way to the efforts of Genpact to reach him.

2   **II.    CLAIMS AGAINST GENPACT AND UNDISPUTED MATERIAL**
3   **FACTS**

4       **A.    Plaintiff alleges that Genpact violated federal and state debt collection**
5   **laws as follows:**

6       i.      **Plaintiff alleges** that Genpact violated §1692d and specifically
7               §1692d(5) of the FDCPA and §1788.11(d) and (e) of the
8               RFDCPA by allegedly causing a telephone to ring repeatedly and
9               continuously with the intent to annoy, abuse, and harass Plaintiff
10              (¶¶18a, 18b, 23a, and 23b of the Complaint);

11      ii.     **Plaintiff alleges** that Genpact violated §1788.17 of the RFDCPA
12              by continuously failing to comply with the statutory regulations
13              contained within the FDCPA (¶23c of the Complaint).

14      **B.    Genpact's communications with Plaintiff and its attempts to reach**
15              **him were only intended to discuss payment of his debt and they were**
16              **not intended to annoy, abuse, and harass Plaintiff.**

17          Genpact is a debt collector and is subject to the FDCPA and the RFDCPA
18  [Separate Statement of Undisputed Facts ("SSUF") No. 1].  Genpact was assigned a
19  debt attributed to Plaintiff by GE Money Bank [SSUF 2].  Plaintiff does not dispute
20  that he owes the debt or the amount of that debt [SSUF 5].

21          Genpact wrote Plaintiff by a letter dated March 26, 2011 in which he was asked
22  to get in touch with Genpact regarding the debt including to advise Genpact if
23  Plaintiff disputed the debt [SSUF 3].  Plaintiff received that letter but chose not to
24  respond to the letter [SSUF 4].

25          Genpact placed 649 telephone calls to Plaintiff between March 26, 2011 and
26  July 18, 2011 in an attempt to reach him to discuss the GE Money Bank account

[SSUF 6]. Despite varying the times of the calls to increase the possibility of reaching Plaintiff, Plaintiff did not answer a single one of these telephone calls [SSUF 7 and 8]. During that time period, Plaintiff was receiving telephone calls from several other debt collectors in addition to Genpact [SSUF 19].

Genpact left no messages for Plaintiff to avoid any possibility of the messages being heard by third parties [SSUF 10]. Plaintiff agreed that he did not want any messages left that could have been heard by his adult sons who were living with him at the time [SSUF 12]. Although Plaintiff believed that all of the debt collectors who called him left messages, he cannot actually recall any messages from Genpact [SSUF 11].

Plaintiff never communicated with Genpact regarding his GE Money Bank debt [SSUF 15]. Plaintiff knew from his own research of the debt collection laws that he could stop any telephone calls by telling the collector to stop calling him [SSUF 20].

Plaintiff hired a debt resolution service in January 2011 to deal with several debts that he had including the GE Money Bank debt [SSUF 22]. When Plaintiff discussed contacting the various debt collectors who were placing telephone calls to him to demand that they stop calling him, the debt resolution service told him that there should be no contact with the debt collectors regarding the calls and that he would just have to … go along with the program" and that he would just "have to put up with it" [SSUF 23]. The debt resolution service also told Plaintiff not to respond to any of the telephone calls to him, but to keep a record of the calls and provided the forms for Plaintiff to use to keep the call record [SSUF 24]. The debt resolution service subsequently provided Plaintiff's information to his present attorney who contacted Plaintiff [SSUF 25]. At the time of that contact, Plaintiff had not considered contacting any attorneys regarding a lawsuit [SSUF 26].

LAW OFFICES OF TIMOTHY P. JOHNSON

Genpact only telephoned Plaintiff in an attempt to reach him to discuss the GE Money Bank debt [SSUF 12].   Genpact did not intend to annoy, abuse or harass Plaintiff by its telephone calls to Plaintiff [SSUF 12].  Plaintiff is not aware of any evidence that Genpact intended to annoy, abuse or harass him other than the number of telephone calls to him [SSUF 17].  In fact, Genpact had a policy in place to cease any telephone calls to any consumer upon written demand by the consumer as required by the FDCPA and also would cease telephone calls to a consumer upon two oral requests by the consumer to cease calls even though the FDCPA has no such requirement [SSUF 17 and 18].

## III.   ISSUES PRESENTED BY THE SUMMARY JUDGMENT MOTION

Plaintiff contends that the number of telephone calls alone is sufficient evidence of the intent to annoy, abuse or harass Plaintiff so that Plaintiff should prevail on this motion for summary judgment.

Genpact contends Plaintiff must present evidence of its intent to annoy, abuse or harass Plaintiff and that the number of telephone calls alone is not sufficient evidence of that intent as is demonstrated by a number of court rulings on this issue discussed below, but that the pattern of calls and the interaction between the collector and the consumer are the more relevant issues in determining the intent of the collector.  Genpact further contends that recent interpretations of FDCPA liability by various courts now emphasizes personal communications between the consumer and the debt collector rather than simply leaving messages for the consumer as long had been the standard practice.  This emphasis on personal communications inevitably will lead to more telephone calls, especially where contact with the consumer is difficult. This change in emphasis shifts the issue controlling cases such as this from a simple question of "how many calls were made" to a necessity to show real evidence in the interactions between the consumer and the collector that demonstrate an intent

LAW OFFICES OF TIMOTHY P. JOHNSON

1    to annoy, abuse or harass the consumer.

2    **IV.    ISSUES OF LAW**

3        **A.    SUMMARY JUDGMENT SHOULD BE GRANTED WHERE**

4            **THERE IS NO LEGAL OR FACTUAL BASIS FOR LIABILITY**

5              **1.    The Issues To Be Addressed By A Motion For Summary**

6                **Judgment Are Limited To The Scope Of The Pleadings**

7        A plaintiff may not raise a new theory of liability for the first time in his

8    opposition to a motion for summary judgment without amending the complaint.

9    _Coleman v. Quaker Oats Co._ 232 F.3d 1271, 1292 (9th Cir. 2000).

10        **2.    Standards Governing The Motion For Summary Judgment**

11        In _Bowoto v. Chevron Texaco Corp._, 312 F. Supp.2d 1229 (N.D. Cal. 2004),

12    the court succinctly stated the standards governing the summary judgment motion as

13    follows:

14            Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment as a matter of
law." _Fed.R.Civ.P. 56(c)._  The moving party bears the initial burden of
demonstrating the absence of a genuine issue of material fact.  See
_Celotex Corp. v. Catrett,_ 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 2d
(1986).  The moving party, however, has no burden to negate or
disprove matters on which the non-moving party will have the burden of
proof at trial.  The moving party need only point out to the Court that

        there is a absence of evidence to support the non-moving party's case.
See _id._ at 325, 106 S.Ct. 2548.

        The burden then shifts to the non-moving party to "designate
'specific facts showing that there is a genuine issues for trial.'" _Id._ at
324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)).  To carry this burden,
the non-moving party must "do more than simply show that there is
some metaphysical doubt as to the material facts." _Matshushita Electric
Industrial Co., Ltd. v. Zenith Radio Corp.,_ 475 U.S. 574, 586, 106 S.Ct.
1348, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of
evidence ... will be insufficient; there must be evidence on which the

LAW OFFICES OF TIMOTHY P. JOHNSON

LAW OFFICES OF TIMOTHY P. JOHNSON

1  jury could reasonably find for the non-moving party." *Anderson v.*
2  *Liberty Lobby, Inc.* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202
3  (1986).

4  In deciding a motion for summary judgment, the evidence is
5  viewed in the light most favorable to the non-moving party, and all
6  justifiable inferences are to be drawn in its favor. "Credibility
   determinations, the weighing of the evidence, and the drawing of
7  legitimate inferences from the facts are jury functions, not those of a
8  judge ruling on a motion for summary judgment." *Id.* at 255, 106 S.Ct.
   2505.  312 F. Supp.2d at 1234.The Supreme Court in *Celotex Corp. v.*
9  *Catrett* (1986) 477 U.S. 317, 325, 106 S.Ct. 2548, described the
10 summary judgment procedure as piercing the pleadings and putting the
   opposition to the test of affirmatively coming forward with sufficient
11 evidence supporting its claims to create a genuine issue for trial.

12 The *Celotex* court also noted that the summary judgment is not a disfavored
   remedy:

13 Summary judgment procedure is properly regarded not as a
14 disfavored procedural shortcut, but rather as an integral part of the
15 Federal Rules as a whole, which are designed "to secure the just, speedy
   and inexpensive determination of every action."  477 U.S. at 327.

16 **B.    THERE IS NO EVIDENCE THAT GENPACT TELEPHONED**
17 **PLAINTIFF WITH THE INTENT TO ANNOY, ABUSE AND**
18 **HARASS HIM**

19 The FDCPA prohibits collectors from engaging in "any conduct the natural
20 consequence of which is to harass, oppress, or abuse any person in connection with
21 the collection of any debt."  15 U.S.C. §1692d.  Here, the only conduct complained of
22 by Plaintiff in his Complaint and in his deposition is the telephone calls to Plaintiff.
23 There were no actual contacts between Plaintiff and Genpact as a result of the
24 telephone calls and no messages were left by Genpact for Plaintiff as a result of the
25 calls.  15 U.S.C. § 1692d(5) defines as follows the conduct with regard to telephone
26 calls to a debtor which constitutes a violation of the FDCPA: a collector violates the
27 FDCPA by  "[c]ausing a telephone to ring or engaging any person in telephone
28 conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any

person at the called number." (italics added).   Similarly, the RFDCPA makes it unlawful to cause "a telephone to ring repeatedly or continuously to annoy the person called," California Civil Code § 1788.11(d).

These provisions require that the debt collector have a specific "intent to annoy, abuse, or harass" and therefore the only possible interpretation is that proof of such intent is an essential element of a plaintiff's case.   These provisions negate the general rule that the FDCPA is a strict liability statute.   In this limited context, a plaintiff must show the debt collector's state of mind in order to meet his burden of proof.  Any other interpretation would negate the specific language of these statutes.

The Supreme Court has long recognized that:

> [i]t is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.  As early as in Bacon's Abridgment, sect. 2, it was said that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." This rule has been repeated innumerable times.

*Wash. Market Co. v. Hoffman*, 101 U.S. 112, 115-116 (1879).   This rule has long been followed in the Ninth Circuit.   *Syverson v. IBM*, 472 F.3d 1072, 1086 (9th Cir. 2007).   Thus, courts are bound, if possible, to give effect to all of a statute's parts and to seek a construction that will give force to and preserve all the words of the statute.

It is submitted that there is and will be no competent evidence demonstrating that Genpact telephoned Plaintiff with the intent to annoy, abuse and harass him. Essentially, it is anticipated that Plaintiff's argument will simply be that: "they called me a lot of times, *ipso facto*, they had an intent to annoy or harass me."

///

///

///

LAW OFFICES OF TIMOTHY P. JOHNSON

**C.    CALL FREQUENCY SHOULD NOT BE DEEMED SUFFICIENT EVIDENCE OF INTENT UNDER SECTION 1692d(5) AS AN INCREASED CALLING FREQUENCY HAS BEEN MADE NECESSARY BY A LINE OF CASES INTERPRETING THE FDCPA**

This case has arisen as a result of several court decisions in which the manner by which debt collectors can contact debtors has been directed.  As a result of obligations to provide debtors with "mini-Miranda warnings" and yet avoid communicating information to third parties, debt collectors have been strongly encouraged by the courts to initiate direct contact with debtors as opposed to leaving messages.  Without the opportunity to leave a voice mail message, the debt collector is required to make more frequent call attempts until contact is established.  When the debtor intentionally ignores those call attempts—as opposed to getting on the phone and dealing with the issue by either making arrangements to pay the debt or telling the debt collector to stop calling—the number of calls will continue while the attempts to make direct contact with the debtor continue.

The FDCPA, at 15 U.S.C.  § 1692e(11), mandates what is known as the "mini-Miranda warning":

**False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

...

(11)  The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

LAW OFFICES OF TIMOTHY P. JOHNSON

Pursuant to this provision, every single communication with a consumer must disclose that it involves the collection of a debt. However, juxtaposed against this obligation is the prohibition contained in 15 U.S.C. § 1692c(b):

> (b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

These two sections have presented the greatest difficulty for debt collectors in the context of what voice mail messages, if any, they may leave for consumer debtors. A message that is a "communication" with a consumer must include the mini-Miranda message. However, a collector may not communicate to a third party that it is collecting a debt, and it has no control over who actually receives or hears a voice mail or answering machine message at any given number.

The United States District Court for the Central District of California issued an order in *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104 (C.D. Cal. 2005), in which the court concluded that answering machine messages are "communications" for FDCPA purposes:

> While the messages may not technically mention specific information about a debt or the nature of the call, § 1692a(2) applies to information conveyed "directly or indirectly." Defendant conveyed information to plaintiff, including the fact that there was an important matter that she should attend to and instructions on how to do so.

*Hosseinzadeh* at 1116.

The messages at issue in *Hosseinzadeh* conveyed information concerning a debt, albeit vaguely, and they were therefore communications that would be subject

LAW OFFICES OF TIMOTHY P. JOHNSON

LAW OFFICES OF TIMOTHY P. JOHNSON

1   to the mini-Miranda requirement.

2       Subsequent to the *Hosseinzadeh* decision, the United States District Court for

3   the Southern District of New York issued an opinion in *Foti v. NCO Financial*

4   *Systems,* 424 F.Supp.2d 643 (S.D.N.Y. 2006). As in *Hosseinzadeh,* one of the issues

5   before that Court was whether a "mini-Miranda warning" must be given in voice mail

6   messages left for consumers. The *Foti* court concluded that the FDCPA mandates

7   inclusion of the mini-Miranda warning in voice mail messages left for the consumer.

8       However, the *Foti* court called into question whether collectors were even

9   entitled to leave voice mail messages:

10

11          In this case, the fact that NCO may not be able to leave a pre-
           recorded message that complies with both § 1692e(11) and § 1692c(b)
12          of the Act in no way warrants a conclusion that "communication" should
           be narrowly interpreted. Rather, it merely suggests that a debt collector
13          is not permitted to leave a pre-recorded message in violation of the
           FDCPA. Debt collectors, however, could continue to use other means to
14          collect, including calling and directly speaking with the consumer or
           sending appropriate letters.

15  *Foti* at 659.

16      *Foti* left debt collectors with three basic choices when it comes to voice mail

17  messages:

18      1.   leave messages which do not contain a mini-Miranda warning and risk a

19  class action for alleged violations of Section 1692e(11);

20      2.   leave messages which contain a mini-Miranda warning and risk

21  unintentional third-party disclosures and risk under Section 1692c(b) suits seeking

22  damages for such disclosures; or

23      3.   attempt to reach the consumer by phone without leaving a voice mail

24  message at all and risk suits under Section 1692d(5).

25      These are not merely theoretical concerns. *Foti* represents the consequences of

the first approach. Plaintiff himself has filed another lawsuit entitled Stirling v. Rogers Law Office in the Central District of California, Case No. CV11 08092 JHN SSx (attached as Exhibit 3 to the Declaration of Timothy P. Johnson in which Plaintiff claims that messages were left for him that did not properly identify the caller as a debt collector. Plaintiff's wife has also filed a lawsuit entitled Stirling v. Monarch Recovery Management, Inc. in the Central District of California, Case No. LACV 11-6372 PLA (attached as Exhibit 4 to the Declaration of Timothy P. Johnson) in which she also claims that messages were left for her that did not properly identify the caller as a debt collector.

The instant case and the other call frequency cases discussed below represent examples of the third situation. *Berg v. Merch. Ass'n Collection Div.*, 586 F.Supp.2d 1336 (S.D. Fla. 2008) represents the second. In *Berg*, the defendant left the following message for a consumer debtor:

> Hello. This message is for Thomas Berg. If you are not the person requested, disconnect this recording now. By continuing to listen to this recording you acknowledge you are the person requested. This is MAF Collection Services. We are expecting your call at 1-800-749-7710. This is an attempt to collect a debt. Any information obtained will be used for that purpose. 1-800-749-7710.

*Berg* at 1339.

Berg filed a suit under the FDCPA alleging that his father, stepmother, stepmother's ex-spouse, girlfriend, and neighbor all heard the message in his home on one or more occasions. The defendant asserted in response that the plain language of Section 1692c(b) does not prohibit debt collectors from leaving voice mail messages in a debtor's home and that it was not the intent of Congress for the FDCPA to prohibit the voice mail messages of the type at issue.

The *Berg* court denied the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), concluding that Berg had stated a claim under Section

LAW OFFICES OF TIMOTHY P. JOHNSON

1   1692c(b).  Casting further doubt on the ability of debt collectors to leave voice mail

2   messages, the *Berg* court stated:

4           The Court is aware that this ruling will make it difficult, though
5   perhaps not impossible, for debt collectors to comply with all of §§
    1692c(b), 1692d(6), and 1692e(11 at once in a message left on the
6   consumer's voice mail.  However, we follow reasoning similar to *Foti* to
    find no reason that a debt collector has an entitlement to use this
7   particular method of communication.  Debt collectors have other
8   methods to reach debtors including postal mail, in-person contact, and
    speaking directly by telephone.

10  *Berg* at 1344.

11          Subsequent to the ruling in *Berg,* the Eleventh Circuit Court of Appeals

12  addressed the *Foti* issue in *Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350*

13  (11th Cir. 2009).  The *Edwards* court noted:

15          Niagara complains that if it is not permitted to leave out of its
    answering machine messages the disclosure required by § 1692e(11), the
16  result will be that it cannot leave any messages on answering machines.
17  That assumes an answering machine message that includes the
    disclosure required by § 1692e(11), if heard by a third party, would
18  violate § 1692c(b).  We have not decided that issue, but even if
    Niagara's assumption is correct, the answer is that the Act does not
19  guarantee a debt collector the right to leave answering machine
20  messages.

21  *Edwards* at 1354.

22          The consequence of these cases is that debt collectors have a strong incentive

23  not to leave messages since every single voice mail message risks a violation of the

24  FDCPA.  This can be seen in the case at hand.  Genpact is not accused of leaving

25  multiple messages per day nor is Genpact accused of engaging Plaintiff in

26  conversations multiple times per day.  Genpact's calling pattern merely represents a

27  course of conduct that navigates the perilous waters of these cases with a focus on

28

LAW OFFICES OF TIMOTHY P. JOHNSON

1   reaching the consumer as best it can without leaving a message.[1]

## D.   THE NUMBER OF CALLS ALONE CANNOT SUPPORT A CLAIM FOR A VIOLATION OF DEBT COLLECTION LAWS.

Call frequency, standing alone, cannot ordinarily demonstrate the requisite intent.   The text of Section 1692d(5) recognizes that it is permissible to cause a telephone to ring or engage any person in telephone conversation repeatedly as long as such conduct is not coupled with the intent to annoy, abuse, or harass.   Thus, there are actually two separate elements of proof to this alleged violation:   (1) the frequency of the calls; and (2) the intent of the collector in placing those calls.

Though it imposed some restrictions when it enacted the FDCPA, "Congress did not intend the FDCPA to completely bar any debt collection calls." *Gorman v. Wolpoff & Abramson, LLP,* 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds,* 584 F. 3d 1147 (9th Cir. 2009), *petition for cert. filed,* No. 09-1142 (U.S. Mar. 15, 2010).   To establish a violation of section 1692d(5), the *Gorman* court stated that the consumer must show that the calls were made with the intent to annoy, abuse, or harass. *Id.*   (See also: *Martin v. Select Portfolio Serving Holding Corp.,* 2008 WL618788,*6 (S.D. Ohio Mar. 3, 2008) where it was stated: "To prevail under section 1692d, the consumer must show not only that the contents of the calls were harassing, abusive, or misleading, but must also establish the caller's intent."   With regard to an issue of hang up calls which involves the same issues as those in this case, Plaintiff's burden was described in *Bey v. Daimler Chrysler Servs. Of N. Am.,* 2006 U.S. Dist. LEXIS 8261,*30, 2006 WL 361385 (D.N.J. Feb. 15, 2006) as follows:   "[p]laintiff must provide evidence such that a reasonable juror could

---

[1] A similar situation involving multiple calls over a period of time arose in VanHorn v. Genpact Services, LLC, 09-CV-1047-S-GAF (W.D. Missouri) which also involved Plaintiff's law firm and which resulted in the granting of a summary judgment motion in favor of Genpact.

LAW OFFICES OF TIMOTHY P. JOHNSON

1   conclude that such calls were caused by Defendants with an intent to harass.  Absent

2   such evidence, Plaintiff's mere allegations of hang up calls is insufficient to survive

3   summary judgment."

4       The *Edwards* and *Berg* courts have strongly encouraged debt collectors to

5   establish personal contact with debtors rather than incur the risks inherent in leaving

6   voice mail messages.  In light of these cases, this Court should hold that there is no

7   duty to leave a message and should recognize the right of a debt collector to make

8   multiple call attempts in a day, provided that there is not more than one contact, i.e.

9   either a message or a conversation, in any given day.  Such a rule is consistent with

10  the decisions of multiple courts across the country.

11      It is anticipated that Plaintiff will argue that the number of calls from Genpact

12  to Plaintiff is conclusive evidence of Genpact's intent to harass Plaintiff.  Plaintiff

13  testified at his deposition that the only evidence that he was aware of that Genpact

14  "intended" to harass him was based on the number of calls by Genpact to him.

15  However, the number of calls alone does not demonstrate an intent to harass,

16  especially where there is absolutely no contact as is the case here to put Genpact on

17  notice that its calls were actually being received by Plaintiff.

18      In *Krapf v. Nationwide Credit Inc.,* 2010 U.S. Dist. LEXIS 57849 (C.D. Cal.

19  May 21, 2010), while Judge Selna was concerned about the call volume of six calls

20  per day, however, it appears that it was the pattern of the collector in placing calls

21  within three minutes apart and where the collector called even after the plaintiff had

22  picked up the phone and talked to the collector's representative that demonstrated the

23  intent required by the debt collection laws in addition to the number of calls which

24  created the issue of intent for the jury [Knapf at *9-10] as noted in *Jiminez v.*

25  *Accounts Receivable Management, Inc..* 2010 U.S. Dist. LEXIS 141780 (C.D. Cal.

26  November 15, 2010) at footnote 6.

LAW OFFICES OF TIMOTHY P. JOHNSON

1      The following cases similarly highlight the need for a pattern of conduct that

2   would provide a basis for a finding of an intent to annoy, abuse or harass the

3   consumer regardless of the number of calls to the consumer.   Such a pattern of

4   conduct to demonstrate intent is similarly missing from this case.

5      As noted in *Saltzman v. I.C. Systems,* 2009 U.S. Dist. LEXIS 90681 (E.D.

6   Mich. September 30, 2009) at *20, where there was a similar argument that the

7   number of calls dictated that the issue of harassment had to be determined by a jury,

8   the number and pattern of calls did not constitute "evidence that Defendant has acted

9   in a manner that would be actionable as harassment, oppression, or abuse" and that

10   the "significant disparity between the number of telephone calls placed by Defendant

11   with Plaintiff and the number of actual successful conversations with Plaintiff ...

12   suggests a difficulty of reaching Plaintiff, rather than an intent to harass."

13

14      Here, there can be no dispute that the number of calls made by Genpact to

15   Plaintiff reflects a difficulty of reaching Plaintiff rather than an intent to harass.

16   Plaintiff admitted that he intentionally elected to not answer or respond to any of the

17   calls from Genpact.   There were no conversations between Plaintiff and Genpact.

18   Plaintiff never communicated in any fashion with Genpact regarding the debt that he

19   admittedly owed or his intentions regarding payment of that debt.

20      A similar situation arose in *Holliday v. Virtuoso Sourcing Group, LLC,* 2011

21   U.S. Dist. LEXIS 127760 (S.D. Illinois November 4, 2011).   That court granted a

22   motion to dismiss with leave to amend and, in so doing, observed:

23      Holliday's allegations do not plausibly suggest a violation of 15

24     U.S.C. §1692d.   He alleges that Virtuoso called him at least two times a

25     day beginning in March 2011, but he does not allege any facts relating to
       the circumstances of those calls.   As Holliday notes in his response,

26     there is no bright line rule for how many calls are sufficient to infer an

27     intent to harass, oppress or abuse...Indeed, the Court can imagine
       scenarios where such a pattern would constitute abuse (e.g., calling daily

28     in the middle of the night and letting the phone ring for hours on end or
       hanging up when the call is answered) and where it would not (e.g.,

LAW OFFICES OF TIMOTHY P. JOHNSON

calling the morning, letting it ring a reasonable number of times without being answered, and calling again in the evening, letting it ring a reasonable number of times without being answered, and then trying again the next day until contact with the debtor is made)…" *Holliday* at **5-6.

This case does not involve immediate recalling of the debtor after the debtor hung up as was the case in *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864 (Dist. N.D. 1981) or more than 90 calls to the debtor's home that included harassing content, failure to identify themselves and calling back immediately after a hang up as was the case in *Fausto v. Credigy Services Corp.*, 589 F. Supp.2d 1049 (N.D. Cal. 2009) where it was determined that factual issues precluded summary judgment.

Recent decisions from around the country show that summary judgment for Genpact is proper here on the section 1692d and 1692d(5) claims.

In *Carman v. The CBE Group, Inc.*, 2011 U.S. Dist. LEXIS 29730 (D. Kan. March 23, 2011) there were 149 calls to plaintiff's home and work over an approximate 55 day period. Other than one contact with plaintiff at work early in the attempts to reach her, there were no other actual contacts or messages as a result of any of the calls. The *Carman* court noted that there was no evidence of any egregious conduct to demonstrate an intent to annoy, abuse or harass plaintiff, accordingly, summary judgment was granted in favor of the defendant. *Carman* at *21-22.

Summary judgment was also granted in *Pugliese v. Prof. Recovery Serv., Inc.*, 2010 U.S. Dist. LEXIS 2632562 (E.D. Mich. June 29, 2010) where there were approximately 350 calls over an approximate seven month period.  There were between 6 and 10 contacts with plaintiff during that period. Noting that any call from a debt collector is likely unwelcome, the *Pugliese* court held that the debt collector was "only making legitimate, while persistent efforts to reach Plaintiff, and …that this alone is insufficient to violate the FDCPA".

LAW OFFICES OF TIMOTHY P. JOHNSON

In *Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla.), the court granted summary judgment in favor of a debt collector who called a consumer fifty-seven times, including seven times in a single day.  Despite the number of calls, the *Tucker* court found that the "evidence demonstrates that CBE placed each of its telephone calls with an intent to reach [plaintiff's daughter] rather than an intent to harass Plaintiff" since there were never more than seven calls in a single day, only left a total of six messages and never called back after leaving a message.  710 F. Supp. 2d at 1305.

As noted in *Arteaga v. Asset Acceptance, LLC,* 2010 U.S. Dist. LEXIS 865451*20 (E.D. Cal. August 23, 2006) in commenting on the holding in *Tucker v. CBE Group, Inc.,* 2010 WL 1849034, **1, 3 (M.D. Fla. May 5, 2010), "the facts [in *Tucker*] did not raise reasonable inference of intent to harass where debt collector made 57 calls to the plaintiff, including seven calls in one day, because the debt collector never spoke to the debtor, was never asked to cease calling, and never called back on the same day it had left a message".

In *Katz v. Capital One,* 2010 WL 1039850*3 (E.D. Va. Mar. 18, 2010), there were "fifteen to seventeen" calls made to the debtor.  However, the *Katz* court concluded that there was no evidence to establish "that the phone calls were intended to be annoying, abusive, or harassing.  Instead, the records show that Allied, believing the debt to be valid, attempted to take steps to collect that debt."  The court emphasized that there was no evidence that the calls "were made back-to-back, at inconvenient times, after plaintiff had asked [the collector] to stop calling, or immediately after plaintiff hung up."  Accordingly, the court granted summary judgment for the collector under section 1692d.

Summary judgment was granted in *Saltzman,* supra, for a collector who placed "somewhere between twenty and fifty unsuccessful telephone calls and between two and ten successful telephone calls" to the consumer in just over one month.

LAW OFFICES OF TIMOTHY P. JOHNSON

These decisions reflect an emerging trend among the district courts to reject FDCPA claims based solely upon the number of call attempts made by the collector. These decisions reflect the practical reality that collectors often must make multiple attempts before contacting debtors, and that there can be no violation of law unless the record also reflects other conduct evidencing an intent by the collector to harass or annoy the person called.  It is submitted that there is no such evidence here.

Similar issues were raised in *Millsap v. CCB Credit Servs.*, 2008 U.S. Dist. LEXIS 110149*20-22 (E.D. Mich. September 30, 2008).  Although the number of calls was never specified—plaintiff in that case described the number of calls as "numerous" and defendant pointed out, as here, that only eight of the calls resulted in actual conversations between the parties—the *Millsap* court looked beyond the number of calls on a summary judgment motion and was unable to find any evidence of an intent to annoy, abuse, or harass.  In so doing, the *Millsap* court noted that there were no instances where the defendant immediately called plaintiff back after she termination a conversation nor was there anything about the pattern of the calls that "would suggest anything other than a legitimate, if persistent, effort to reach her and make arrangements to collect her debt."

**E.    THERE WERE NO ACTUAL CONTACTS TO SUPPORT PLAINTIFF'S RFDCPA CLAIM PURSUANT TO 1788.11(e).**

Plaintiff claims that Genpact violated California Civil Code § 1788.11(e) which prohibits communicating with the debtor with such frequency as to be unreasonable under the circumstances.  However, there is no evidence of any actual contacts between Genpact and Plaintiff.  Since §1788.11(e) requires an actual contact between the debtor and the collector, this claim should be dismissed.  *Krapf, supra*, at *12.

///

///

LAW OFFICES OF TIMOTHY P. JOHNSON

**F.   IF SUMMARY JUDGMENT IS GRANTED AS TO THE FDCPA CLAIMS, PLAINTIFF CANNOT PURSUE A CLAIM UNDER § 1788.17**

If this Court determines that GENPACT did not violate the FDCPA, Plaintiff cannot proceed with a claim pursuant to § 1788.17 which simply incorporates the FDCPA into the RFDCPA. *Jiminez, supra*, at *3.

**V.   CONCLUSION**

Genpact acknowledges that a large number of telephone calls were made to Plaintiff in an unsuccessful attempt to reach him to discuss the GE Money Bank debt. However, the number of calls reflected the difficulty that Genpact was experiencing in reaching Plaintiff—caused as it turns out by Plaintiff and his debt resolution service—and does not evidence an intent to annoy, abuse or harass Plaintiff.[1]

There was no pattern of abusive conduct towards Plaintiff by Genpact to evidence the requisite intent to annoy, abuse or harass him.   There were no communications with Plaintiff or messages left for Plaintiff that would demonstrate any improper intent by Genpact.

For these reasons, it is submitted that the court should grant this motion for summary judgment.

Dated:  January 31, 2012

                    **LAW OFFICES OF TIMOTHY P. JOHNSON**


                    By:   /s/Timothy Johnson
                         TIMOTHY P. JOHNSON
                         Attorneys for Defendant
                         GENPACT SERVICES, LLC

LAW OFFICES OF TIMOTHY P. JOHNSON

*Stirling v. Genpact*
**USDC, Case No. LACV 11-6369 JEM**

### CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 1970 Old Tustin Avenue, Second Floor, Santa Ana, CA 92705.

On February 1, 2012, I served a true copy of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on all interested parties in this action by:

[  ]   By personally delivering it to the person(s) indicated below in the manner as provided in FRCP 5(B);

[  ]   By depositing it in the United States mail in a sealed envelope with the postage thereon fully prepaid to the following:

[  ]   By overnight delivery using an envelope or package provided by the overnight service carrier and addressed to the following:

[ X ]   By ECF:  On this date, I electronically filed the document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to the following:

Michael S. Agruss, Esq.
KROHN & MOSS, LTD
10474 Santa Monica Blvd, Ste 401
Los Angeles, CA 90025

I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

**EXECUTED** on February 1, 2012 at Santa Ana, California.

_/s/Timothy Johnson_____
TIMOTHY P. JOHNSON

LAW OFFICES OF TIMOTHY P. JOHNSON